Next case is Commonwealth Scientific, I believe in Column 0, v. Buffalo Technology, 2007-1449. If it pleases the court, I'd like to begin with the issue of written description because that is dispositive of the entire case. There's no question that the District Court, as Markman claimed construction, found that the amendments which added the claims which do not recite any limitations on radio frequencies were broadening amendments. And our submission is that the District Court get that right, but unfortunately it applied the wrong law. Isn't it new matter law rather than written description? Well, Your Honor, I guess the situation here is these were claims... Because the amendment put in the description, but wasn't it new matter? As I learned in the Patent Office many years ago, we used to look at new matter as being in the description and you would object to the specification for new matter, but you would reject the claims under 112 because those new claims, and they're new claims, did not find written description in the application as file. And when you look at the statutes involving defenses, it's 112 that's listed as a defense, not the new matter statute of 132. But for violation of the new matter prohibition, there has to be a consequence. Yes. Isn't that invalidity? I would say that that would be the natural one that I would say, Your Honor. I think that whether you call this a written description issue or a new matter issue, you end up at the end of the day at the same point, and it's really the same analysis as to what happened. The original application, beginning with the abstract... Didn't figure six in the original application show that you can transmit two to three gigahertz range? No, Your Honor. Those were internal radio frequencies to the device. Those were not being transmitted externally. When you look at... Would one of skill in the art have understood that you could transfer, transmit them externally as well? What you're talking about is what might be obvious to one of ordinary skill in the art, as our expert Mr. Bagby talked about, is a possibility if, as he said, there was sufficient bandwidth. But as this court found in Lockwood for American Airlines, what's obvious is not the same as written description. Second, and more importantly... Didn't your expert also admit that he had no view as to whether the original specification disclosed an invention that operated only at 10 gigahertz or above? So he didn't even have... He's one of skill in the art. He seemed to not share your view as enthusiastically. I think his testimony was that... He didn't draw any conclusion one way or the other. Well, he seemed forward with an invalidated path. We'd want somebody to draw a rather conclusive effect, a clear and convincing conclusion, wouldn't we? I agree, Your Honor. But our expert did say that he saw no written description of doing this. And remember, what we talked about for radio frequencies is down to 3,000 hertz, seven orders of magnitude below the 10 gigahertz, 10 billion hertz that is recited in the patent. And even if we go to 1 or 2 billion hertz, you're still orders of magnitude different in the scope of this claim. The fact is, if you look at the abstract of the disclosure, you look at drawing figure 3, you look at the original specification, the original claims, there is not a single blaze bar for any radio frequency below 10 billion hertz. The fact is that CSIRO itself, in arguing for patentability, described the invention as using relatively high radio frequencies, higher than 10 gigahertz. Again, an example of the patentee acknowledging that the invention was to use radio frequencies on the order of 10 billion hertz. The district court, in deciding that there was a lack of written description, decided that the specification must contain a clear statement restricting the scope of the invention. That's not the law in this court. The law is that there has to be some description pointing out to somebody of ordinary skill in the art that the inventor was in possession of performing the invention at the full range of radio frequencies that they've now amended both the specification and the claims to recite. I'd like to ask you about anticipation, which leads me to claim 42 and its preamble. Yes, your honor. Is it your view that that is a non-limiting preamble? Certainly with respect to the apparatus it is, your honor. I believe Judge Rader's laptop probably has Wi-Fi. If we take the interpretation of the claim, it means that as Judge Rader's computer sits in this courtroom, it's an allegedly infringing device if you've got .11a or .11g capabilities. But if Judge Rader was to take that same laptop... People don't usually win appeals by accusing the court of having... No. I said allegedly, your honor. But if he takes that same laptop out of the Lafayette Square, he's now outside. The apparatus hasn't changed, yet now he's in a non-infringing situation. If he sits inside Starbucks and connects to the hotspot at Starbucks... In other words, you're saying it is non-limiting. It's non-limiting. Therefore, the structure is anticipated by what? Well, first off, with respect to claim 42... Rault? Well, Rault, according to Judge Davis, would anticipate claims 42 to, I believe, 48 and 56 to 60, if my memory holds me correct. With respect to 56 to 60, there's no question, but those are anticipated. If you look at claim 42, Rault does not have a transceiver. Let me be frank about that. He is simply one-way communication. However, I think that Wilkinson has every single function that's recited in all the asserted claims. And the dispute there... No, the functions, Your Honor, are there. The issue is, what is the structure of the OFDM or COFDM? Five names for the same thing. If you incorporate Bingham by reference, and he tells you, Wilkinson does, that number one, because you're going to have long delays, about 100 nanoseconds, on the same order of magnitude that he talks about, that one way of increasing your throughput, your added transmission rate, is to go to COFDM. Says it right in the patent expressly. Then he tells you to go see Bingham. He takes you to footnote 7. When you go into Bingham, all that Bingham talks about is implementation of COFDM, and he gives you a couple of examples, and his preferred one is with the FFT, IFFT implementation, that is the specific one used in the 069 patent. The argument that the incorporation by reference, and Wilkinson doesn't comply with the patent office rules for incorporation by reference into a patent, is simply not relevant here. But what set aside the rule as it applies to applications, what authority, if you will, does the authority of the proposition then, when it goes by reference, then allegedly anticipating prior art reference, then another prior art reference is enough to render the anticipation one that comes from the single reference itself. I'd have to reference our brief, your honor. I don't have a case off the top of my head. But the fact is, I think if you look at Wilkinson, you look at what he's telling you, he is telling you, use COFDM, and for the structure, see Bingham. That's what he's telling you. And the fact that it's in a footnote, I don't think changes anything. It just sounds more like obviousness than anticipation, because you're talking about multiple references, and you're talking about a suggestion, a pretty explicit suggestion. Goodbye. Well, I would agree, your honor. But you really have to press obviousness on the basis of the combination of references. Your honor, I wish I could explain to you and understood why that was the case. We did not have the case below you, your honor. It was not presented to Judge Davis. Obviousness based on those two was not. It was not, your honor. I have to confront that. What Judge Davis did, since you're interested in obviousness and anticipation, is he looked at the Wilkinson reference, and he found, indeed, I think he said Sire was an expert, admitted that every function was in Wilkinson. What he did was he then said, okay, for anticipation, I also have to find that the corresponding structure is described in Wilkinson that matches up with the corresponding structure in the 069 patent. Correct. What he then did is he decided that, since Wilkinson had none, that there was no anticipation. But he forgot that in obviousness, Wilkinson had laid out a road map for doing an indoor land with high transmission rates that dealt with the multi-path problem. All the functions were there. You had Raoul, who was concerned about digital transmissions, radio frequency transmissions, in a multi-path environment, albeit outdoors, but every function that Wilkinson described was also described in Raoul with one significant difference. Structure was provided. Judge Davis found that structure was provided and distinguished over Raoul only on the preamble where he interpreted in a confined environment to be indoors. So when you look at Wilkinson and you look at Raoul, you've got two references attacking the same problem, one indoors, one outdoors, same functions involved. And the structure is fully taught in the other. The pieces come together for obviousness. And so the court erred below in deciding that the assertive claims were valid. There was a very strong case of obviousness made out by the combination of Raoul and Wilkinson. Should we remand? If you decide the written description, if the case has a written description, then yes, there is possibly a remand, but you have to get past the issue of infringement. Now, with respect to claims 56 to 60, Raoul anticipates same structure, same functions, no question about that. The decision of validity should be reversed there. For claims 68 to 72, there's two bases for anticipation. We have Wilkinson and we have Raoul. In their opposition brief, they took the view that those claims were not means plus function claims, but true process claims. And if that's the case, the process is laid out at Wilkinson and we don't have to get into any dispute about structure. As far as the difference with Raoul, it's the issue of doing the process. Raoul does the process. Raoul does it with the same apparatus. He suggests outside, but it's the same process steps. It's the process steps that are the subject of the patent, not where you're doing them. You're well into your rebuttal. I'm sorry. Use it or save it. I'd like to save it, Your Honor. I'd just like to say that with respect to the injunction, the issue is the combination of the rand plus the offer to license everyone. Thank you. Mr. Furness. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I'm Dan Furness for the Commonwealth Scientific and Industrial Research Organization. The district court in this case did an incredibly diligent job and did so with the assistance of a court-appointed neutral electrical engineer who, according to his billings to the parties who never spoke with him, spent more than $300 on this. There is no doubt on the technical issues that the court made a reasonable decision. Tell us about anticipation. Yes, Your Honor. And my concern that preamble of claim 42 is not limited. Yes, Your Honor. First of all. And what the trial court says is a concession by Ciro. Do you call it Ciro or Ciro? Ciro, Your Honor. Ciro, all right. Concession that absent that limitation as preamble is being limited, it's Raul, that's the way you pronounce it. Yes, Your Honor. First of all, that argument was not raised in the district court. It was not raised. Buffalo did not argue that confined multipath was not a limitation. In fact, they proposed an alternate claim construction which was rejected by the court. So this argument was not raised and this court has repeatedly held that it should not reach those issues because had they been reached, Judge Davis would have dealt with it. He didn't have the opportunity. Had he dealt with it, what would have been observed is as follows. Second, this court has said repeatedly most recently in the Catalina marketing case that when a limitation is added to the preamble for the purposes of patentability, it ipso facto becomes a limitation. That's exactly what happened here. The initial rejection of the claims over two references was met with an amendment in which the language confined multipath environment was added for the purposes of patentability and therefore it becomes a limitation. But third, I don't have to rely just on technical arguments. The reality is that the evidence in the record was undisputed that an indoor radio environment is distinctly different from an outdoor environment. There was testimony from Dr. Peter Monson. There was testimony from Dr. Jeffrey Andrews at the University of Texas. There was testimony from Dr. David Vance who ran IBM's unsuccessful YLAN program. They tried for five years and couldn't do it. All to the effect that the indoor environment is substantially different. So it is a limitation. Moreover, this court has said that where preamble phrases breathe life into the claim, where they are part of the definition itself, they must be considered as limitations. How can they breathe life into the claim? You've got a whole lot of structural limitations. The number of means clauses, is it any different if it's used indoor or outdoors? There's one key limitation that is directly tied to indoor, Your Honor. And that is, what CSIRO decided is everyone was trying to fight this multi-path problem and they're trying to make the symbols shorter and shorter so they can get speed. So they tried directional antennas, they tried equalization. What CSIRO recognized was don't fight it, deal with it. So they lengthened the symbol period. If you look at the claim, it says modulate the symbol so that the symbol period is longer than the significant ones of the indirect paths. And what that means... So that's exactly what Roe also said? No, Roe goes the other way in an outdoor system because there it says you want to make the symbol period shorter to deal with the Doppler effect that is happening. But on Roe, Your Honor, let me make a very important point that Buffalo's never talked about. The Roe technology was in a U.S. patent called Pommier. Pommier and Roe all worked together in France at an outfit called CCET. Everything that is in Roe is in Pommier in much more detail. And Pommier was examined by the patent office and the patent was allowed over Pommier. We made that point, Dr. Monson makes that point at A2500 of the record. It was never disputed. If an electrical engineer were to sit down and compare Roe with Pommier, you would see that Pommier is the same technique in much more detail. And the difference is that the system that was for outdoor broadcasting, the reason it breathes life into the claims is because when you're talking about gauging the symbol period, the multipath reflections indoors are much shorter, much, much shorter than outdoor because the reflections are coming from much nearer objects. So to optimize this system, you need to optimize it for indoor. And I would make an analogy here. The only evidence before the trial court was, well, there's multipath outside and it's all radio waves. Well, Your Honor, I submit to you that the water in the Potomac River and the water in the Atlantic Ocean are both wet and they're both liquid. But if you were going to raise fish, you better know the difference between the two or it's not going to work out. This system was designed for use indoors. It was specifically designed for use indoors. And this outdoor system would not, not only not, it might operate crudely, but, you know, the fact that you can use an indoor wireless LAN outside the Starbucks doesn't prove that this is not an invention that is designed for use indoors and that works indoors. And what about new matter written description? Yes, Your Honor. This specification, all over it, said in excess of 10 gigahertz. And this amendment, this wasn't a CIP. It's not a question of priority which filing gate one gets. There was added this subject matter that said at radio frequency, which aside from its perhaps inadequate grammar, was broadening. Why isn't that new matter? Well, as this Court has always held, that you're entitled to amend, claim everything that's covered by your specification. So the fact that your initial claims are narrower than your disclosure does not prevent you from expanding those claims. Well, the question is what was in the spec. Exactly, Your Honor. And Judge Rader, I think, hit it. Figure 6, among others, very clearly shows that this technology and Buffalo's expert admitted in his deposition flat out he didn't understand why I was asking him the questions and when I showed him Figure 6, I said wouldn't one of skill in the art understand if you look at Figure 6, on the far right there's just what's called a step-up, step-down oscillator. And what it does is it changes the radio waves from one frequency to another. One of skill in the art recognizes that all of the modulation techniques that are described in the patent are complete in this diagram at 2 to 3 gigahertz. And they're stepping it up solely because at that time there wasn't any available regulatory bandwidth. So they put in a practical limitation. It wasn't a limitation on the invention. It was just a limitation because at that time there wasn't any bandwidth available below 10 gigahertz. But Mr. Bagby admitted, and all of CSIRO's experts concurred, that one of skill in the art would recognize that you could use these techniques at any radio frequency. In fact, during the hearing I commented to Judge Davis that the technique was frequency independent. He understood what that meant. He asked counsel for Buffalo, is that right? Is this technique frequency independent? And the answer was, yes it is, but it doesn't matter. Well, it matters a lot. This technique can be practiced at any radio frequency. Now, at 3 kilohertz it's going to be so slow that Judge Davis' grandchildren would be in college by the time the signal came back, so it wouldn't be useful. But the technique is a technique that's unique to radio waves, not to any particular frequency. The frequency has no particular importance in this. And figure 6 clearly shows Dr. Andrews who said one of skill in the art would recognize that these techniques are frequency independent. Dr. Monson said the same thing. And as a matter of electrical engineering and physics, they clearly are. These techniques can be practiced at any particular frequency. So the amendment, moreover, this court has noted that under 132 the Patent Office has specific expertise. And while we have a strong presumption of validity of patents, we have an even stronger, if there's something stronger than clear and convincing, when the Patent Office has determined that matters are not new matter because that's their specific expertise. Did they determine that was not new matter or just let it in? Well, we have to infer they knew what they were doing, Your Honor. They didn't address that issue explicitly at any particular point in time. I'd like to talk about, and on anticipation, there's a couple of other things. Buffalo argues that using an old apparatus for a new practice, the Rho work was theoretical. There was no digital signal broadcasting technology when Rho wrote his article. These folks in France were working on trying to develop digital audio radio. This was a thought piece, a theoretical piece. They didn't actually develop this technology until it wasn't usable until the 21st century. We're not talking about production to practice. We're talking about disclosure, reference. It wasn't like there was an outdoor radio transmitter that you could actually test and use indoors and say this works. This was just a thought piece. And that is another point I want to make. There was absolutely no evidence that this was enabled. These were theoretical articles talking about what might be done, whereas the patent is a specific way of doing it. Let me speak a little bit about obviousness, because I think it's very, very theoretical. Well, Your Honor, there's not enough detail in those articles to build anything, frankly. It talks about, and a good example of that would be Wilkinson. Buffalo makes a big point that in footnote 7, Wilkinson refers to OFDM. But if you look at footnote 6, he references an article on frequency hopping spread spectrum, which is a different way of accomplishing the result and it's a way that others tried and failed with. So which was Wilkinson recommending? Was he recommending footnote 7, OFDM, or was he recommending footnote 6, frequency hopping spread spectrum? He wasn't recommending any of them. In fact, Wilkinson's conclusion was that one should use what he referred to as past-end equalization. So these articles are theoretical. You could do this, or you could do that. This might work, that might work. None of them had a full system. And even though the elements are there, this Court has often said that to anticipate, it has to be put together in the same way, in the same order. So the major elements are there, but the composition of the full system is clearly not there, and Buffalo made no attempt to show enablement of either of these articles. No one could build. My client spent years and tens of millions of dollars perfecting this invention. The idea that you can take Roe or Pommier and build a system based on that is simply not accurate. I want to talk a little bit about obviousness because it's very, very, very important. And that is that here, as this Court has said, especially after KSR, that secondary considerations of non-obviousness are very, very important. And in the Stratoflex case, this Court said, indeed, that kind of evidence is most probative and cogent evidence of non-obviousness. Here, it was overwhelming evidence in the record of secondary considerations. First, Longfeld Mead. Dr. LeVake report shows that people were trying to develop an indoor wireless LAN as early as 1978. Second, unexpected results. Dr. Bantz, who led the development of a high-speed wireless LAN, testified that they looked at the outdoor arch and didn't think it was going to be helpful. It was too different. This is not a paid expert. This is a recipient witness, Your Honor. And he was working at the time, from 88 to 93, trying to build a wireless LAN. And he testified that he looked at the outdoor materials, he was aware of digital signal broadcasting, and concluded that it wasn't going to be of assistance. With regard to OFDM, Dr. Bantz testified that they looked at OFDM and quickly dismissed it. Those are the words in his declaration. Uncontradicted. But perhaps most powerful is the evidence of the failure of others. In the Panduit versus Dennison case, which we did not cite, but which I'd like to mention because the language is so strong, 774 Fed Second, 1082. In that case, they said evidence that many others had tried and failed to build a superior tie is, quote, virtually irrefutable evidence of non-obviousness. Well, if you go to the record at page A, 2467, Dr. Levesque gives you his report on his efforts, and he's with Worcester Poly, which specializes in this area, which has a wireless institute, which has a wireless museum. A museum of failed devices, I should say. And he reports that a virtual who's who of technology companies the entire world attempted to solve the problem. IBM, Fujitsu, Hitachi, HP, Motorola, Bell Labs, Motorola a second time, Windata, Lucent, NCR, Raytheon, IBM, again, Proxim, NetWave, all tried during this exact same period to come up with a wireless land, and all failed. That is overwhelmingly powerful evidence of non-obviousness. What Buffalo is doing is the typical thing that has to be done in this situation. You cherry pick the prior art with the benefit of hindsight. You use the patent as a template. You know what the answer is, and you go out and find it in the prior art. But this was not the case. There were numerous different techniques, but most importantly, in the real world, before litigation, before any experts are hired to represent one party or another, we had a thought, a real-life experiment. And that experiment was companies trying to come up with a high-speed wireless land, and they all failed. Tens of millions of dollars, perhaps hundreds of millions of dollars. Motorola actually sold a system called Altair, which is listed in the patent, which was a failure. They spent a lot of money on it and ended up writing it off. So that evidence, that real-world evidence, shows overwhelmingly that this is not an obvious invention. And then finally, Your Honor, there's commercial success. The SIRO technique, which they invented, a bunch of radio astronomers down under, taking their world-class expertise in radio astronomy, solved the problem that so many others had tried and failed. That technology, Your Honor, is all over the world. You can go to Google, hook up that laptop, and use an 802.11g interface wireless. You can do it. I've done it in Prague. I've done it in Africa. And you can do it anywhere in the world. More than 300 million units have been sold. This technology is wildly successful. This is a pioneer invention, Your Honor. Let me see if I... Let me make sure that I understand what you're saying with respect to Judge Davis's characterization of what was added on the path. Judge Davis says that the... ... ... ... ... ... That's correct. Do you disagree with that? I don't disagree. Those functions are in there. It's not an enabling reference, but I do agree with that. SIROS did not contest that the three issues of OFDM, forward error correction, and interweaving were not in the Rho reference. They were, but they were also in Pommier, and Pommier was before the patent office. But more importantly, it's a world of difference. There was no testimony, even Mr. Bagby. No one said that the outdoor radio environment is the same as the indoor. It's not. The fact that you can use one of